**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PEAK DESIGN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED IN SCHEDULE "A,"<br><br>　　　　　　　Defendants. | No. 25-cv-13523<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Peak Design ("Plaintiff") by and through its undersigned counsel, hereby files this Complaint for design patent infringement under the Patent Act and trademark infringement under the Lanham Act against the Partnerships and Unincorporated Associations Identified in Schedule "A" ("Defendants"). In support hereof, Plaintiff states as follows:

## I.　JURISDICTION AND VENUE

1.　This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, et seq., the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.　Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of fully interactive, commercial internet stores operating under Defendant domain names and/or Defendant Internet Stores identified in Schedule A. Specifically, each Defendant directly reaches out to do business with Illinois residents by operating

or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products infringing Plaintiff's federally registered design patents and trademarks directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II.    INTRODUCTION

3.    Plaintiff filed this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by (1) making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of unauthorized and unlicensed products that infringe Plaintiff's design patents (U.S. Patent Nos. D802,649 and D839,947) ("PEAK DESIGN Designs") and/or (2) selling and/or offering for sale unauthorized and unlicensed products using counterfeit versions of Plaintiff's federally registered trademarks PEAK DESIGN (Reg. No. 5,544,140) and  (Reg. No. 5,511,399) (the "PEAK DESIGN Trademarks"). *See* **Exhibit 1**. Defendants created internet stores ("Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine copies of Plaintiff's products when in fact the Stores are selling counterfeits to unknowing customers, and/or making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of infringing products to unknowing consumers.

4.    Defendant Internet Stores share unique identifiers, such as similar design elements of the infringing product offered for sale and, on information and belief, these similarities suggest that Defendant Internet Stores share common manufacturing sources, thus establishing that the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting

operation, including changing the names of Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's registered design patents and trademarks, as well as to protect unknowing consumers from purchasing infringing products over the Internet.   Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged both through consumer confusion, dilution, and tarnishment of its valuable trademarks and through its loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented designs. Accordingly, Plaintiff seeks injunctive and monetary relief.

### III.    THE PARTIES

### Plaintiff Peak Design Corporation

5.    Plaintiff is a California corporation that specializes in travel gear, phone cases, and most famously, camera accessories such as straps, clips, and tripods (the "PEAK DESIGN Products"). Founded in 2010, Plaintiff is known for its exceptional innovation. The Company has been gaining recognition for its recent campaigns, including its Roller Pro luggage, The Outdoor Line of backpacks and accessories, and Micro Clutch and other camera accessories.

6.    Among Plaintiff's most important assets is the intellectual property associated with the PEAK DESIGN Products. Specifically, Plaintiff owns numerous U.S. trademark registrations used to identify the PEAK DESIGN Products that it markets and sells. Furthermore, Plaintiff is the owner of several U.S. design patents for its unique designs.

7.    Genuine PEAK DESIGN Products are sold through its website[1] and authorized retail channels such as Amazon, as well as its five retail stores in New York, San Francisco, Los

---

[1]https://www.peakdesign.com/global/

Angeles, Prague, and Tokyo. They are recognized by the public as being exclusively associated with Plaintiff. Plaintiff's unique products have been advertised with its federally registered trademarks for several years. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, advertisements, and product demonstration videos to educate consumers on both its products and trademarked name. Its online marketplaces and social media feature original content, reviews, and testimonials for the PEAK DESIGN Products.

8.      Plaintiff incorporates a variety of distinctive elements in its various PEAK DESIGN Products. It has registered the PEAK DESIGN Trademarks with the United States Patent and Trademark Office and uses them in connection with the advertisement, design, distribution, offer for sale, and sale of its PEAK DESIGN Products.

9.      The registrations for the PEAK DESIGN Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use PEAK DESIGN Trademarks pursuant to 15 U.S.C. § 1057(b). *See* **Exhibit 1**. The PEAK DESIGN Trademarks have been used continuously by Plaintiff, its predecessors-in-interest, and associated entities in the United States for years and have never been abandoned since the first use. The PEAK DESIGN Trademarks are famous throughout the United States and the world.

10.      The PEAK DESIGN Trademarks are exclusive to Plaintiff and are displayed extensively on the PEAK DESIGN Products as well as in Plaintiff's marketing and promotion materials. The PEAK DESIGN Trademarks are distinctive when applied to the PEAK DESIGN Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's exacting quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff ensures that products bearing its trademarks are manufactured to the highest quality standard.

11. The PEAK DESIGN Products are also known for their distinctive patented designs. Camera gear and accessories fashioned after these designs are associated with the quality and innovation that the public has come to expect from the PEAK DESIGN Products. The designs are represented in the following design patents:

| Patent Number: | D802,649 | Issue Date: | Nov. 14, 2017 |
|---|---|---|---|



| Patent Number: | D839,947 | Issue Date: | Feb. 5, 2019 |
|---|---|---|---|

| CLAIM | |
|---|---|
| Figure 1 | Figure 2 |
|  |  |
| Figure 3 | Figure 4 |
|  |  |
| Figure 5 | Figure 6 |
|  |  |
| Figure 7 | Figure 8 |
|  |  |



| Figure 9 | Figure 10 |
|---|---|
| FIG. 9 | FIG. 10 |
| Figure 11 | Figure 12 |
| FIG. 11 | FIG. 12 |
| Figure 13 | Figure 14 |
| FIG. 13 | FIG. 14 |

12. Plaintiff is the lawful assignee of all rights, titles, and interests in and to the PEAK DESIGN Designs. The patents were lawfully issued on November 14, 2017 and February 5, 2019, respectively.

7

13.     The above U.S. registrations for the PEAK DESIGN Trademarks and Designs are valid, subsisting, in full force and effect and are currently in use in connection with the PEAK DESIGN Products. True and correct copies of the U.S. Registration Certificates for the above-listed trademarks and design patents are attached hereto as **Exhibit 1**.

14.     Plaintiff is engaged in the business of distributing and retailing high-quality PEAK DESIGN Products within the Northern District of Illinois under its federally registered trademarks and design patents. Plaintiff spends hundreds of thousands of dollars in marketing, advertising, and otherwise promoting the PEAK DESIGN Products. Products bearing the PEAK DESIGN Trademarks and Designs have become among the most popular of their kind in the United States and the world. The PEAK DESIGN brand and products have also been the subject of extensive unsolicited publicity resulting from their exceptional quality and innovative design. The PEAK DESIGN Trademarks have achieved tremendous fame and recognition, which has only added to the inherent and acquired distinctiveness of the marks. As such, the goodwill associated with PEAK DESIGN Trademarks and Designs is of incalculable and inestimable value to Plaintiff.

**Defendants**

15.     Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and this Judicial District.

16.     Defendants are an interrelated group of infringers and counterfeiters who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine PEAK DESIGN Products, while they actually sell inferior imitations of PEAK DESIGN Products. Defendants also knowingly and willfully manufacture, import, distribute, offer for sale, and sell products that infringe Plaintiff's design patents. Defendant Internet Stores share unique identifiers, such as common design elements, same or similar counterfeit products offered for sale, similar counterfeit product descriptions, same or substantially similar shopping cart platforms, accepted payment methods, and check-out methods, lack of contact information, and identically or similarly priced counterfeit products and volume sale discounts. As such, Defendant Internet Stores bear a logical relationship among them and suggest that Defendants' illegal operations arise out of the same transactions or occurrences. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Plaintiff has identified numerous marketplace listings on e-Commerce platforms such as, but not limited to, Alibaba, AliExpress, Amazon, eBay, Etsy, Shopify, Temu, Walmart, and Wish, which, under various aliases, have been offering for sale, completing sales, and shipping illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating new aliases. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products

into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizure, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

18.     Counterfeiting rings take advantage of the anonymity provided by the Internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including

Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

19.    Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of PEAK DESIGN Trademarks and Designs, including its exclusive right to use and license such intellectual property and associated goodwill.

20.    Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21.    The infringing products for sale in Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

22.    Upon information and belief, Defendants work in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction or occurrence or the same series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully, offered products that infringe the PEAK DESIGN Designs for sale, as well as sold and/or imported

such infringing products into the United States for subsequent resale or use. Each e-commerce store operating under an alias offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold infringing products in the United States and Illinois over the Internet.

23.     Upon information and belief, Defendants also deceive unknowing customers by using the PEAK DESIGN Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's PEAK DESIGN branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

24.     Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the PEAK DESIGN Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the Internet. The infringing products are not PEAK DESIGN Products of Plaintiff. Plaintiff did not manufacture, inspect, or package the infringing products and did not approve the counterfeit products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

25.     Defendants' use of PEAK DESIGN Trademarks on or in connection with advertising, marketing, distribution, offering for sale, and sale of infringing products is likely to

cause and has caused confusion, mistake, and deception among consumers, including those in Illinois and this Judicial District, and is irreparably harming Plaintiff.

26.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon PEAK DESIGN Trademarks unless preliminarily and permanently enjoined.

## COUNT I

### INFRINGEMENT OF UNITED STATES DESIGN PATENT (35 U.S.C. § 271)

27.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 26.

28.     Plaintiff is the lawful assignee of all right, title, and interest of the PEAK DESIGN Designs. *See* **Exhibit 1**.

29.     Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of infringing products that infringe the ornamental design claimed in the Plaintiff's design patents either directly or under the doctrine of equivalents.

30.     Defendants have been and are infringing Plaintiff's design patents by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the accused products in violation of 35 U.S.C.§ 271(a).

31.     Defendants have infringed Plaintiff's design patents through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented designs. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

32. Defendants have infringed Plaintiff's design patents because, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the ornamental design of Plaintiff's design patents and the overall design features of Defendants' products are substantially the same, if not identical, with resemblance such as to deceive an ordinary observer, including to deceive such observer to purchase an infringing product supposing it to be Plaintiff's product protected by Plaintiff's design patents.

33. Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages that are appropriate pursuant to 35 U.S.C. § 284.

## COUNT II

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35. This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of federally registered PEAK DESIGN Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PEAK DESIGN Trademarks are distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the PEAK DESIGN Trademarks.

36. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing the PEAK DESIGN Trademarks without Plaintiff's permission.

14

37.     Plaintiff is the exclusive owner of PEAK DESIGN Trademarks. Plaintiff's U.S. registrations for PEAK DESIGN Trademarks are in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the PEAK DESIGN Trademarks and are willfully infringing and intentionally using the PEAK DESIGN Trademarks in connection with counterfeit items. Defendants' willful, intentional, and unauthorized use of the PEAK DESIGN Trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

40.     The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's PEAK DESIGN Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

i.     Using Plaintiff's trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a

genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademarks;

ii. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from Plaintiff's trademarks;

iii. Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's trademarks;

iv. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

v. Further infringing Plaintiff's trademarks and damaging Plaintiff's goodwill;

vi. Otherwise competing unfairly with Plaintiff in any manner;

vii. Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademarks, or any reproduction, counterfeit copy, or colorable imitations thereof;

viii.     Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

ix.     Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's trademarks, trade dress, or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and,

x.     Registering any additional domain names that use or incorporate any portion of the Plaintiff's trademarks; and,

B.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.     Displaying images protected by the Plaintiff's trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and

ii.     Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale,

17

and protected by the Plaintiff's trademarks, trade dress, or any reproduction, counterfeit copy, or colorable imitation thereof; and,

C.      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D.      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba, AliExpress, Amazon, eBay, Etsy, Shopify, Temu, Walmart, and Wish; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, X; Internet search engines such as Google, Bing, and Yahoo; webhosts for Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's trademarks ; shall:

i.      Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit PEAK DESIGN Products using Plaintiff's trademarks, including any accounts associated with the Defendants listed on Schedule A;

ii.      Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing products using Plaintiff's trademarks; and,

iii.      Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index; and,

E.      That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.      For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's trademarks in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G.      For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.      In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademarks;

I.      That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      i.   making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of any products not authorized by Plaintiff and that include any reproduction, copy, or colorable imitation of the design claimed in the PEAK DESIGN Designs;

     ii.   aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the PEAK DESIGN Designs; and

iii. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b); and

J.      Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Alibaba, AliExpress, Amazon, eBay, Etsy, Shopify, Temu, Walmart, and Wish; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and X; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe the ornamental design claimed in the PEAK DESIGN Designs;

K.      That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's design patents, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

L.      That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of PEAK DESIGN Designs be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

M.      In the alternative, that Plaintiff be awarded complete accounting of all revenue and profits realized by Defendants from Defendants' infringement of PEAK DESIGN Designs, pursuant to 35 U.S.C. § 289;

N.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

O.      That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.


Dated: November 4, 2025                  Respectfully submitted,

/s/ James E. Judge
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 W. Washington St., Ste. 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com